UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEROY STRAYHORN, #178167

       Plaintiff,                        Case No. 11-15216

v.                                      District Judge Patrick J. Duggan
                                            Magistrate Judge R. Steven Whalen

PATRICIA CARUSO, ET AL.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

Before the Court is Defendants Patricia Caruso and Dr. George Pramstaller's Motion for Summary Judgment [Docket #22], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED, dismissing these Defendants with prejudice.

## I.   FACTS

Plaintiff, an inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed suit on November 28, 2011 alleging Eighth Amendment violations pursuant to 42 U.S.C. § 1983.

Plaintiff, housed at the Thumb Correctional Facility ("TCF") in Lapeer, Michigan, makes the following factual allegations. On March 8, 2009, he experienced severe chest pains, difficulty breathing and arm and leg numbness. *Complaint* at ¶21. He alleges that

nitroglycerin, which had been earlier prescribed by MDOC staff, did not alleviate his symptoms. *Id.* Plaintiff states that his cell mate summoned Defendant Russell Malicoat ("R. Mailcoat"), a corrections officer working at TCF, to the cell. *Id.* at ¶24. However, R. Malicoat did not treat Plaintiff or seek medical help, but instead directed him to "stop hyperventilating." Plaintiff states that when R. Malicoat departed, he was lying on the floor of his cell. *Id.* He alleges his cell mate was able to get the attention of a second staff member, who acknowledged the seriousness of his condition and took him to TCF's health services department for treatment. *Id.* at ¶25. Upon arriving at health services, Plaintiff was met by Defendant Karen Sue Malicoat ("K. Malicoat"), an R.N. employed with TCF. *Id.* at ¶26. Plaintiff alleges that although K. Malicoat was well aware of his personal and family history of heart problems, she did not evaluate his condition or attempt treatment, instead directing him to go sit in the lobby area and breathe into a paper bag. *Id.* at ¶¶26-27. Plaintiff states when he pleaded with K. Malicoat for adequate treatment, she responded by threatening to place him in segregation. *Id.* at ¶28. He was given a pain reliever before being returned to his cell. *Id.* at ¶30.

Plaintiff states that the following day, he was taken by ambulance to a local hospital where it was confirmed that he had suffered a series of heart attacks. *Id.* at ¶31. He underwent immediate surgery (angioplasty) during which time it was discovered that he had two additional blocked arteries which would require followup care by a cardiologist. *Id.* at ¶¶32-34. Plaintiff was released on March 12, 2009 and filed a grievance against both R. Malicoat and K. Malicoat on March 16, 2009. *Id.* at ¶36. Plaintiff states that he also filed

a complaint with the Michigan Department of Community Health against K. Malicoat.[1] *Id.* at ¶38. He alleges that on or around April 3, 2009 and again on or around April 30, 2009, Internal Affairs Investigator Bruce Siebert and TCF's Deputy Burton interviewed him. *Id.* at ¶37.

Plaintiff states that he underwent angioplasty a second time on June 5, 2009 after experiencing chest pains and shortness of breath. *Id.* at ¶39. He was released on June 9 and on June 12, was examined by Defendant Zakiuddin A. Khan, M.D., a physician under contract to Defendant Prison Health Services, Inc. ("PHS") to provide medical care for MDOC inmates. *Id.* at ¶40. Plaintiff claims that Dr. Khan "verbally chastised" him for going to the hospital a second time, saying "'we not send you again . . . we increase you meds . . . you go now.'" *Id.* Plaintiff states that on September 20, 2009, he submitted his first request for followup care as instructed by the cardiologist during the March, 2009 hospitalization. *Id.* at ¶41. He alleges that his request for followup care by a cardiologist was denied by Defendant Prison Health Services, instructing TCF staff that if Plaintiff "was doing well," no need existed for a referral to a cardiologist. *Id.* at ¶42. On November 30, 2009, Plaintiff submitted another request for followup care by a cardiologist after experiencing "symptom[s] similar to those he had suffered prior to his hear attack." *Id.* at ¶43. He alleges that he restated his current symptoms to Dr. Khan at a December 7, 2009

---

[1] On July 30, 2010, a representative of the Michigan Department of Community Health informed Plaintiff that disciplinary sanctions had been imposed against K. Malicoat. *Docket #1-1,* pg. 36. She was placed on probation status for one year. *Id.* at pgs. 37-47 of 50.

examination. *Id.* at ¶44. Plaintiff claims that following the examination, Dr. Khan, in an effort to conceal evidence of his own deliberate indifference to Plaintiff's condition, later placed "misleading" information into the medical file. *Id.* at ¶45. Specifically, Plaintiff claims that the following month, he discovered that Dr. Khan had put notations in the file falsely showing that he had conducted examinations. *Id.* at ¶46. On February 2, 2010, Plaintiff filed a grievance complaining of the falsification of his medical records. *Id.* at ¶47. Although the "Step Two" grievance coordinator, Defendant C. Mangus, acknowledged that the medical file stated incorrectly that Plaintiff was examined on January 5, 2010, Plaintiff faults Mangus's conclusion that the information in the medical record was not deliberately falsified. *Id.* at ¶51. Plaintiff alleges that on February 12, 2010, he sent a request to Defendant Patricia Caruso, then the Director of MDOC, requesting further investigation into the matter. *Id.* at ¶52. The Complaint's factual allegations regarding Caruso are stated as follows:

> It is plaintiff's belief that defendant Caruso being made aware of plaintiff's numerous Step III grievances, Internal Affairs Investigation reports and the sanctions imposed by the MDOC *and* the Michigan Department of Community Health against defendant K. Malicoat, and the manner in which MDOC employees and agents were acting to deprive plaintiff of his [Eighth] Amendment right to adequate medical care, exhibited a deliberate indifference to these violations by refusing to act upon them, thereby encouraging and allowing MDOC staff and contracted agents to operate in an illegal manner in regards to plaintiff. *Id.* at ¶53.

Plaintiff also contends that Caruso demonstrated deliberate indifference to his health and life by failing to implement procedures which would have detected his heart problems. *Id.* at ¶57-2. Plaintiff alleges that Defendant Pramstaller, MDOC's former Chief Medical Officer,

-4-

exhibited deliberate indifference by denying him necessary care for his heart condition. *Id.* at ¶57-1. Plaintiff claims that "he continues to suffer unnecessary mental and emotional stress and anxiety due to defendants and . . . [PHS's] deliberate indifference to his known cardiac condition, placing him at significant risk of future injury and potential death." *Id.* at ¶54. He requests both monetary damages and injunctive relief.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary

judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

## III. DISCUSSION[2]

Defendants Caruso and Pramstaller argue that they were not personally involved in the alleged deprivation of Plaintiff's constitutional rights and are thus entitled to qualified immunity. *Defendants' Brief,* 2-6, *Docket #22.* Defendant Caruso, the former Director of the MDOC, states that her involvement was limited to signing "the closure of the Internal Affairs investigation" regarding Plaintiff's March, 2009 treatment by TCF staff, but did not participate in alleged constitutional violations. *Defendants' Exhibit 1, ¶7.* She states further that she "had no direct involvement in reviewing, investigating, or responding to prisoner grievances." *Id.* at ¶8. Caruso also states that a search of her records did not reveal any correspondence from Plaintiff to her and that she did not become aware of the allegations against her until being served with the Complaint. *Id.* at ¶¶9-10.

Defendant Pramstaller, formerly MDOC's Chief Medical Officer, retired in March, 2008. He states that in his former position as the Chair of the Medical Services Advisory Committe ("MSAC"), his sole involvement in Plaintiff's treatment occurred long before the March, 2009 and forward events alleged in the present lawsuit. *Defendants' Exhibit 2, ¶5*

---

[2]Plaintiff's stipulation to the dismissal of present Defendants is buried among exhibits accompanying his response to an unrelated motion to dismiss. *Docket #44,* pg. 22 of 27. Nonetheless, I will proceed in my analysis of these claims, although it would have been helpful if the Plaintiff had informed the Court in direct response to this motion.

He does acknowledge that on April 27, 2004 he recommended that Plaintiff be denied a request for a catherization, but instead, undergo "aggressive medical management," and a stress test to determine whether a catherization was necessary. *Id.*, *Defendants' Exhibit 3*. Plaintiff has not responded to the present motion.

The plaintiff in a § 1983 case must clearly show that a named defendant was personally involved in the allegations underlying the Complaint. *Rizzo v. Goode,* 423 U.S. 362, 372, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Bellamy v. Bradley,* 729 F.2d 416 (6th Cir.1984). Mere failure to act does not amount to personal involvement. *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir.1999)(citing *Salehpour v. University of Tennessee,* 159 F.3d 199, 206 (6th Cir.1998)). Moreover, being aware of an inmate's complaint and failing to take action does not create liability under § 1983. *Poe v. Haydon,* 853 F.2d 418, 429 (6th Cir.1988).

Even assuming that Caruso was informed of the alleged Eighth Amendment violations prior to the filing of the present suit, this allegation alone is insufficient to personal involvement. *Poe, supra.* Plaintiff does not allege that Caruso was involved in the 2009 denial of treatment or Defendant Khan's alleged falsification of the medical file. Although Caruso admits that she signed off on an internal investigation precipitated by K. Malicoat's alleged actions, this does not allege personal involvement, that Caruso promulgated the claimed violations of his civil rights, or that she acquiesced to K. Malicoat's actions. To the contrary, attachments to the Complaint suggest that as a result of the internal investigation, K. Malicoat received a 30-day suspension from work as a result of her alleged failure to treat Plaintiff. *Docket #1-1* at pg. 39 of 50. Because Plaintiff cannot show that Caruso violated

his constitutional rights, she is also entitled to qualified immunity. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

Dr. Pramstaller's connection to the alleged constitutional violations is even more tenuous, given that he retired an entire year before the March, 2009 events transpired. However, Plaintiff faults Dr. Pramstaller for upholding the 2004 denial of a heart catherization by subordinate medical staff. *Complaint* at ¶15, *Defendants' Exhibit 3, Docket #1-2* at pg. 3 of 17. Plaintiff appears to attribute the March, 2009 heart attacks to the denial of a 2004 catherization.

Whether Dr. Pramstaller's denial of the catherization, which contradicted a cardiologist's recommendation that the procedure was warranted, constituted medical malpractice is debatable. *Docket #1-1,* at pg. 50 of 50 - *Docket #1-2,* at pgs. 1-2. However, even assuming a causal connection could be established between the 2004 denial and the March, 2009 events, Dr. Pramstaller's actions do not rise to the level of a Eighth Amendment violation. *Estelle v. Gamble,* 429 U.S. 97, 105–106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner").

Dr. Pramstaller's 2004 determination that a catherization was not immediately warranted was accompanied by recommendations that Plaintiff receive a stress test and "aggressive medical management of risk factors." *Defendants' Exhibit 3.* Moreover, Dr.

-8-

Pramstaller's determination did not rule out the possibility that a catherization would be required but rather, stated that "[i]f pharmacologic stress test shows a large area of myocardium is at risk," the request for cardiac catherization should be resubmitted. *Id.* "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas,* 537 F.2d 857, 860, n. 5 (6th cir.1976). *See also Sanderfer v. Nichols,* 62 F.3d 151, 154 (6th Cir.1999)(citing *Estelle v. Gamble, supra,* 97 S.Ct. at 292) ("Deliberate indifference . . .does not include negligence in diagnosing a medical condition"). Because Plaintiff can show neither personal involvement in the events beginning in March, 2009 nor a constitutional violation in the 2004 denial, Dr. Pramstaller is also entitled qualified immunity in his individual capacity as a matter of law. *Saucier, supra.*

## IV. CONCLUSION

For these reasons, I recommend that Defendants Caruso and Pramstaller's motion for summary judgment [Docket #22] be GRANTED, dismissing these Defendants with prejudice.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th

Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Date: August 14, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on August 14, 2012.

| | |
|---|---|
| Leroy Strayhorn, #178167<br>Thumb Correctional Facility<br>3225 John Conley Dr<br>Lapeer, MI 48446-2987 | s/Johnetta M. Curry-Williams<br>Case Manager |