UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEROY STRAYHORN, #178167

              Plaintiff,                        Case No. 11-15216

v.                                    District Judge Patrick J. Duggan
                                    Magistrate Judge R. Steven Whalen

PATRICIA CARUSO, ET AL.,

              Defendants.

_____ /

## REPORT AND RECOMMENDATION

Before the Court is Defendants Corizon Health Services Inc., formerly known as Prison Health Services, Inc. ("PHS"), and Dr. Zakiuddin A. Khan M.D.'s Motion to Dismiss [Docket #21], filed February 17, 2012 which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be DENIED as to both Defendants.

## I. BACKGROUND FACTS

Plaintiff, an inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed suit on November 28, 2011 alleging Eighth Amendment violations pursuant to 42 U.S.C. § 1983.

Plaintiff, housed at the Thumb Correctional Facility ("TCF")in Lapeer, Michigan, makes the following factual allegations. On March 8, 2009, he experienced severe chest pains, difficulty breathing and arm and leg numbness. *Complaint* at ¶21. He alleges that nitroglycerin, which had been earlier prescribed by MDOC staff, did not alleviate his symptoms. *Id.* Plaintiff states that his cell mate summoned Defendant Russell Malicoat ("R. Mailcoat"), a corrections officer working at TCF, to the cell. *Id.* at ¶24. However, R.

Malicoat did not treat Plaintiff or seek medical help, but instead directed him to "stop hyperventilating." Plaintiff states that when R. Malicoat departed, he was lying on the floor of his cell. *Id.* He alleges his cell mate was able to get the attention of a second staff member, who acknowledged the seriousness of his condition and took him to TCF's health services department for treatment. *Id.* at ¶25. Upon arriving at health services, Plaintiff was met by Defendant Karen Sue Malicoat ("K. Malicoat"), an R.N. employed with TCF. *Id.* at ¶26. Plaintiff alleges that although K. Malicoat was well aware of his personal and family history of heart problems, she did not evaluate his condition or attempt treatment, instead directing him to go sit in the lobby area and breathe into a paper bag. *Id.* at ¶¶26-27. Plaintiff states when he pleaded with K. Malicoat for adequate treatment, she responded by threatening to place him in segregation. *Id.* at ¶28. He was given a pain reliever before being returned to his cell. *Id.* at ¶30.

Plaintiff states that the following day, he was taken by ambulance to a local hospital where it was confirmed that he had suffered a series of heart attacks. *Id.* at ¶31. He underwent immediate surgery (angioplasty), during which time it was discovered that he had two additional blocked arteries which would require followup care by a cardiologist. *Id.* at ¶¶32-34. Plaintiff was released on March 12, 2009 and filed a grievance against both R. Malicoat and K. Malicoat on March 16, 2009. *Id.* at ¶36. Plaintiff states that he also filed a complaint with the Michigan Department of Community Health against K. Malicoat.[1] *Id.* at ¶38. He alleges that on or around April 3, 2009 and again on or around April 30, 2009, Internal Affairs Investigator Bruce Siebert and TCF's Deputy Burton interviewed him. *Id.*

---

[1]

On July 30, 2010, a representative of the Michigan Department of Community Health informed Plaintiff that disciplinary sanctions had been imposed against K. Malicoat. *Docket #1-1,* pg. 36. She was placed on probation status for one year. *Id.* at pgs. 37-47of 50.

at ¶37.

Plaintiff states that he underwent angioplasty a second time on June 5, 2009 after experiencing chest pains and shortness of breath. *Id.* at ¶39. He was released on June 9 and on June 12, was examined by Defendant Zakiuddin A. Khan, M.D., a physician under contract to present Defendant PHS to provide medical care for MDOC inmates. *Id.* at ¶40. Plaintiff claims that Dr. Khan "verbally chastised" him for going to the hospital for a second time, saying "'we not send you again . . . we increase you meds . . . you go now.'" *Id.*

Plaintiff states that on September 20, 2009, he submitted his first request for followup care as instructed by the cardiologist during the March, 2009 hospitalization. *Id.* at ¶41. He alleges that his request for followup care by a cardiologist was denied by Defendant PHS, instructing TCF staff that if Plaintiff "was doing well," no need existed for a referral to a cardiologist. *Id.* at ¶42. On November 30, 2009, Plaintiff submitted another request for followup care by a cardiologist after experiencing "symptom[s] similar to those he had suffered prior to his heart attack." *Id.* at ¶43. He alleges that at a December 7, 2009 examination, he told Dr. Khan that he was experiencing symptoms similar to those experienced before his March, 2009 hospitalization. *Id.* at ¶44. Plaintiff claims that following the examination, Dr. Khan, in an effort to conceal evidence of his own deliberate indifference to Plaintiff's condition, amended the medical file to falsely state that Plaintiff did not experience symptoms, despite the fact that Plaintiff told Dr. Khan that he continued to experience symptoms. *Id.* at ¶45. Plaintiff claims that the following month, he also discovered that Dr. Khan had put notations in the file falsely stating that he had conducted an additional examination in early January, 2010.[2] *Id.* at ¶46. Plaintiff denies that such an

---

[2] On January 19, 2012, Plaintiff filed a supplement to the original claims against Dr. Khan, stating that the insertions to his medical file were "attributed" to Dr. Kahn. *Docket*

examination took place.  *Id.*  On February 2, 2010, Plaintiff filed a grievance complaining of the falsification of his medical records.  *Id.* at ¶47.  Although the "Step Two" grievance coordinator, Defendant C. Mangus, acknowledged that the medical file stated incorrectly that Plaintiff was examined on January 5, 2010, Plaintiff faults Mangus's conclusion that the information in the medical record was not deliberately falsified.  *Id.* at ¶51.  Plaintiff alleges that on February 12, 2010, he sent a request to Defendant Patricia Caruso, then the Director of MDOC, requesting further investigation into the matter.  *Id.*  at ¶52.   Plaintiff also contends that Caruso demonstrated deliberate indifference to his health and life by failing to implement procedures which would have detected his heart problems. *Id.* at ¶57-2.  Plaintiff also alleges that  Defendant Pramstaller, MDOC's former Chief Medical Officer, exhibited indifferent indifference by denying him necessary care for his heart condition in April, 2004. *Id.* at ¶57-1.  Plaintiff claims  "he continues to suffer unnecessary mental and emotional stress and anxiety due to . . . [PHS's] deliberate indifference to his known cardiac condition, placing him at significant risk of future injury and potential death." *Id.* at ¶54.  He requests both monetary damages and injunctive relief.

## II.    STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted."  Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary

---

*#14,* ¶6.  Plaintiff appears to allow for the possibility that  Dr. Kahn did not personally put false information in the file, but does not back away from the original allegation that erroneous information was placed in the medical file for the purpose of covering up evidence of deliberate indifference by either Dr. Kahn or PHS.

judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In assessing the complaint's sufficiency, the court must first determine whether a complaint contains factual allegations, as opposed to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S.662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 556 U.S. at 676 (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007)). Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."

556 U.S. at 679 (internal citations omitted).

## III.   DISCUSSION

### A. Eighth Amendment Allegations

Defendants argue first that the Eight Amendment claims against PHS must be dismissed. *Defendants' Brief,* 5, *Docket #21.* They acknowledge that PHS, employed by the state to fulfill a public function, may be sued pursuant to 42 U.S.C. § 1983. *Id.* (citing *West v. Atkins,* 487 U.S. 42, 54, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)). However, they argue that Plaintiff has failed to identify a policy by PHS that denies "cardiology care or consultations to inmates," contending that the denial of just one request by Plaintiff for a cardiac consultation denied is insufficient to show a policy of Eighth Amendment violations.

*Id.* Defendants do not address the Plaintiff's Eight Amendment allegations made against Dr. Khan or dispute that Eighth Amendment violations occurred. The sole question before the Court is whether the alleged denial of a referral to a cardiologist alleges a unconstitutional policy or custom by PHS.

In response to Defendants' argument, Plaintiff has submitted an affidavit, stating that he made a request on September 20, 2009 for a cardiac consultation because (1) he was experiencing chest pains and shortness of breath consistent with his symptoms before undergoing the March, 2009 procedure and (2) he had been advised by the cardiologist in March, 2009 that his condition would require "close monitoring and management" and six-month checkups. *Response, Docket #44,* pg 17, 19 of 27, ¶¶6, 15. He alleges that his request for followup care by a cardiologist was denied by Defendant PHS, who told TCF staff that if Plaintiff "was doing well," no need existed for a referral to a cardiologist. *Id.* at pg. 19, ¶15. Plaintiff states that he made an identical request on November 30, 2009 which was denied as well. *Id.* at ¶16, *Docket #1-1* at pg. 16 of 50. While he admits that Dr. Khan, a non-cardiologist, met with him on December 7, 2009, Dr. Kahn did not actually examine him or order additional medications in response to Plaintiff's reports of continued symptoms of shortness of breath and chest pain. *Docket #44* at pg. 19, ¶¶17, 20.

For there to be municipal or institutional liability under § 1983, an alleged unconstitutional violation must implement or execute a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers, or be taken pursuant to governmental custom. *Monell v. Department of Social Services.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Under *Monell,* "[m]unicipal policy need not be a written ordinance; it may be a 'statement' or "decision' by a high-ranking official . . . 'whose edicts or acts may fairly be said to represent official policy.'" *Hescott v. City of*

-6-

*Saginaw,* 2012 WL 3236601, *6  (E.D.Mich. 2012)(Ludington, J.).

First, Defendants do not contest that the decision to deny Plaintiff an examination by a cardiologist was made by PHS supervisory staff.  Further, Defendants are incorrect that the denial of a cardiology consultive examination to just one prisoner is intrinsically inadequate to state a municipal policy of Eighth Amendment violations.  "The requirement that a municipality's wrongful actions be a 'policy' is not meant to distinguish isolated incidents from general rules of conduct promulgated by city officials but to distinguish the injuries for which the government entity is responsible under § 1983 from those injuries for which the government should not be held accountable." *Hescott,* at *6 (citing *Meyers v. City of Cincinnati,* 14 F.3d 1115, 1117 (6th Cir.1994)).  Finally, as noted by Plaintiff, Defendants are incorrect that only one request was denied.  Plaintiff has alleged that in addition to the September and November written requests, he had reported his symptoms on numerous occasions between June and December, 2009.  *Response,* pg. 19 of 27, ¶20.

While Defendants argue that PHS is entitled to dismissal because Plaintiff has failed to allege a policy of unconstitutional conduct under *Monell,* their brief does not address Plaintiff's allegations of underlying Eighth Amendment violations. However, I note that Plaintiff has sufficiently pled the Eighth Amendment claims against both PHS and Dr. Khan. Plaintiff's allegations of shortness of breath and chest pains  allege an objectively serious condition.  *Estelle v. Gamble,* 429 U.S. 97, 103; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Plaintiff has also alleged that Defendants were aware of the seriousness of his condition when denying the consultive examination, thus satisfying the second prong of an Eighth Amendment claim, which requires that "the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."  *Farmer v. Brennan,* 511 U.S. 825, 834,

-7-

114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Deliberate indifference may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Id.* Plaintiff alleges that Defendant PHS had access to his medical history and complaints of cardiac symptoms at the time of the denial of the consultive examination, including a recommendation by his treating surgeon that he receive a check by a specialist six months following the catheterization. The medical file would show that (1) Plaintiff sustained a series of heart attacks in March, 2009, (2) a catheterization revealed severe blockage requiring the placement of two cardiac stents, and (3) Plaintiff required a second catheterization in June, 2009. Despite the seriousness of Plaintiff's condition, PHS denied Plaintiff even one post-operative checkup with a cardiologist.

To be sure, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas,* 537 F.2d 857, 860, n. 5 (6th cir.1976). *See also Sanderfer v. Nichols,* 62 F.3d 151, 154 (6th Cir.1999)(citing *Estelle,* 429 U.S. at 105-106 ) . However, the fact that Dr. Khan conducted an "examination" of Plaintiff on December 7, 2009 does not automatically show that Eighth Amendment violations did not occur. Deliberate indifference is not restricted to cases where there is a complete absence of care, and the fact that an inmate receives *some* level of medical attention does not preclude constitutional scrutiny of the quality of that care. *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989).

A factual assessment of whether PHS officials perceived then disregarded Plaintiff's condition is particularly critical given that Plaintiff alleges that Dr Khan disregarded his concerns during the December 7, 2009 examination, and later falsely noted on the medical chart that Plaintiff denied all side effects. *Docket #1-1* at pg. 17 of 50. *See Waldrop,* at 1035

(because "the treatment must be evaluated according to professional standards," a question of fact remains "regarding the quality of care...provided to [the prisoner])." *Id*. Because Plaintiff, at a minimum, has alleged Eighth Amendment violations occurring as a result of PHS directives, dismissal under Rule 12(b)(6) is not appropriate.

## B.  Defendants' Other Arguments for Dismissal are Inapplicable to the Present Case

Defendants assert that the Complaint alleges that Plaintiff is a third party beneficiary to the contract between MDOC and PHS.  *Defendants' Brief* at 6-7.  They argue that "Plaintiff's attempt to assert a claim for breach of contract . . . should be dismissed." Plaintiff's response to the present motion states that at "nowhere" in the Complaint did he allege "that Defendant PHS is contractually obligated" to him a third party beneficiary. *Docket #44* at pg. 3.  I agree that neither the Complaint nor accompanying exhibits can be construed to state a breach of contract claim.

Likewise, Defendants argue that Plaintiff's malpractice claim must be dismissed because he has failed to file an "affidavit of merit" before filing suit against Dr. Kahn. *Defendants' Brief* at 7-8 (citing M.C.L. § 600.2912d).  However again, Plaintiff points out correctly that he is not bringing a state malpractice claim, but rather, alleging Eighth Amendment claims of deliberate indifference pursuant to 42 U.S.C. § 1983. *Response* at 5. Because Plaintiff's claims of inadequate medical care are made pursuant to 42 U.S.C. § 1983, he is not required "to abide by the requirements of the medical malpractice statutes." *Smith v. County of Lenawee,* 2011 WL 1150799, *28 (E.D. Mich. 2011)(Lawson, J.); *Beedle v. Doane,* 2005 WL 1345527, *5 (E.D.Mich.2005)(Morgan, M.J.).  As such, the fact that Plaintiff did not obtain an affidavit of merit does bar the present suit.

## IV.    CONCLUSION

For these reasons,  I recommend that the motion [Docket #21] be DENIED as to both Defendants.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/ R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE

Date: August 15, 2012


-10-

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on August 15, 2012.

Leroy Strayhorn, #178167                    s/Johnetta M. Curry-Williams
Thumb Correctional Facility                  Case Manager
3225 John Conley Dr
Lapeer, MI 48446-2987