UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEROY STRAYHORN,

         Plaintiff,

v.

KAREN SUE MALICOAT, *R.N.*,
ZAKIUDDIN A. KHAN, *Dr.*,
PRISON HEALTH SERVICES,
INCORPORATED, and RUSSELL
MALICOAT,

         Defendants.

Case No. 11-cv-15216

Honorable Patrick J. Duggan

Magistrate Judge R. Steven Whalen

## OPINION AND ORDER (1) ADOPTING REPORT AND RECOMMENDATION AS TO DEFENDANTS RUSSELL MALICOAT AND KAREN MALICOAT, (2) OVERRULING THE OBJECTIONS OF DEFENDANTS RUSSELL MALICOAT AND KAREN MALICOAT, AND (3) GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT MOTIONS OF DEFENDANTS RUSSELL AND KAREN MALICOAT

On November 28, 2011, Plaintiff Leroy Strayhorn instituted this prisoner's civil rights action pursuant to 28 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.  At all times relevant to the events complained of, Plaintiff was in the custody of the Michigan Department of Corrections ("MDOC") and housed

at the Thumb Correctional Facility ("TCF") located in Lapeer, Michigan.[1]  Since

the institution of legal proceedings, some of the originally-named defendants have

been dismissed.  The remaining defendants are: (1) Karen Malicoat ("Karen"),[2]

who, at the time of the complained-of events was employed by the MDOC as a

registered nurse at TCF; (2) Russell ("Russell") Malicoat, a TCF corrections

officer; (3) Prison Health Services ("PHS"), now known as Corizon Health, Inc.,

the entity under contract with the MDOC to provide medical care to inmates; and

(4) Zakiuddin A. Khan, M.D., a physician providing care to MDOC inmates

through a contract with PHS.

Although Plaintiff was initially proceeding pro se, United States Magistrate

Judge R. Steven Whalen granted Plaintiff's request to appoint counsel, who

assisted in ushering this case through discovery.  At the conclusion of the

discovery period, three summary judgment motions were filed pursuant to Federal

Rule of Civil Procedure 56.  Defendants Khan and PHS filed a summary judgment

motion on October 24, 2014 (ECF No. 173), and both Defendant Russell and

Defendant Karen filed their respective summary judgment motions on October 31,

2014 (ECF Nos. 181 & 182).  After the motions had been fully briefed, Magistrate

---

[1] In 2012, the MDOC transferred Plaintiff to the Lakeland Correctional
Facility in Coldwater, Michigan.

[2] Although the Court typically refers to parties by their surname, the Court
uses the given names of the Malicoat Defendants to avoid confusion.  The Court
intends no disrespect in this regard.

Judge Whalen issued a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B), (ECF No. 200), to which four separate sets of objections have been filed.

This Opinion and Order addresses two sets of objections – those filed by Russell (ECF No. 203) and those of Karen (ECF No. 204) – concerning the summary judgment motions filed by the same.[3]  In the R&R, Magistrate Judge Whalen recommends granting summary judgment in favor of Russell and Karen on Plaintiff's conspiracy claim, but denying each summary judgment motion with respect to Plaintiff's Eighth Amendment claims.  For the reasons set forth herein, the Court concludes that the R&R's resolution of the claims against Russell and Karen is the proper one.  As such, the Court will adopt the R&R as it applies to Russell and Karen, will grant summary judgment in their favor as to Plaintiff's conspiracy claim,[4] and will deny each summary judgment motion on Plaintiff's deliberate indifference claim.

## I.    STANDARD OF REVIEW

[3] The objections filed by Defendants Khan and PHS, as well as those filed by Plaintiff, will be adjudicated in a separate Opinion and Order.

[4] The Court notes that although Plaintiff filed an objection to the R&R, the objection does not implicate Magistrate Judge Whalen's resolution of the claims against either Russell or Karen.  Because a party's failure to file objections to certain conclusions of the report and recommendation waives any further right to appeal on those issues, *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987), the Court concludes that any objection to the disposition of the conspiracy claim has been waived.

3

The Federal Magistrates Act of 1968, Pub. L. No. 90-578, 82 Stat. 1107, "creates two different standards of review for district courts when a magistrate [judge's] finding [or recommendation] is challenged in district court [by way of a party's objection].  A district court shall apply a 'clearly erroneous or contrary to law' standard of review for the 'nondispositive' preliminary measures of [28 U.S.C.] § 636(b)(1)(A).  [] Conversely, 'dispositive motions' excepted from § 636(b)(1)(A), . . . are governed by the *de novo* standard." *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) (internal quotations omitted); *see also* 28 U.S.C. § 636(b)(1)(A)-(B); Fed. R. Civ. P. 72.

Parties objecting to a magistrate judge's report and recommendation must do so "[w]ithin fourteen days after being served with a copy[.]"  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2).  When objections are filed to a magistrate judge's report and recommendation on a dispositive matter, such as the objections addressed in this Opinion and Order, courts are directed to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2).  In completing this de novo review, courts reexamine the relevant evidence previously reviewed by the magistrate judge to determine whether the recommendation should be "accept[ed], reject[ed], or modif[ied], in whole or in part[.]"  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).  This does not,

4

however, require a court "to articulate all of the reasons it rejects a party's objections." *Thomas v. Halter*, 131 F. Supp. 2d 942, 944 (E.D. Mich. 2001) (citations omitted).

## II.   ANALYSIS

Plaintiff contends that he was deprived of his rights protected by the Eighth Amendment's prohibition against cruel and unusual punishment.  U.S. Const. amend. VIII ("[C]ruel and unusual punishments [shall not be] inflicted.").  The Eighth Amendment embodies "'broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . .,' against which [courts] must evaluate penal measures." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 290 (1976) (internal citation omitted).  These principles give rise to a governmental "obligation to provide medical care for those whom it is punishing by incarceration." *Id.* at 103, 97 S. Ct. at 290.  Such an obligation arises because inmates "must rely on prison authorities to treat [their] medical needs; if the authorities fail to do so, those needs will not be met." *Id.*

To sustain a § 1983 claim arising under the Eighth Amendment for medical services provided in a prison setting, a plaintiff must satisfy a two-part deliberate indifference test.  Deliberate indifference claims consist of two components, one objective and the other subjective. *See, e.g.*, *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).  "Satisfying the objective component ensures that

5

the alleged deprivation is sufficiently severe, while satisfying the subjective

component 'ensures that the defendant prison official acted with a sufficiently

culpable state of mind.'"  *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir.

2013) (quotation omitted).

      To discharge the burden with respect to the objective prong, a plaintiff must

establish the existence of a "sufficiently serious" medical condition.  *Blackmore*,

390 F.3d at 895.  "Such a medical need has been defined as one 'that has been

diagnosed by a physician as mandating treatment or one that is so obvious that

even a lay person would easily recognize the necessity for a doctor's attention.'"

*Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010) (quoting *Harrison v.*

*Ash*, 539 F.3d 510, 518 (6th Cir. 2008)).

      A plaintiff then must establish the subjective element, which requires a

plaintiff to demonstrate that a defendant acted with "a sufficiently culpable state of

mind in denying medical care."  *Blackmore*, 390 F.3d at 895.  "Only 'deliberate

indifference' to serious medical needs will implicate the protections of the Eighth

Amendment."[5]  *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012). While

---

    [5] It must be remembered that "the Eighth Amendment prohibits
mistreatment only if it is tantamount to punishment, and thus courts have imposed
liability upon prison officials only where they are so deliberately indifferent to the
serious medical needs of prisoners as to unnecessarily and wantonly inflict pain."
*Perez v. Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006) (internal quotation
marks omitted).

6

deliberate indifference entails something more than mere negligence or even gross negligence, the standard is satisfied by something less than acts or omissions for the purpose of causing harm or with knowledge that harm will result. *Farmer v. Brennan*, 511 U.S. 825, 835-36, 114 S. Ct. 1970, 1978 (1994); *Wright v. Taylor*, 79 F. App'x 829, 831 (6th Cir. 2003) (unpublished). In short, "[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm[.]" *Wright*, 79 F. App'x at 831 (citation omitted); *accord Farmer*, 511 U.S. at 836-38, 114 S. Ct. at 1978-79 (equating "deliberate indifference" to the "recklessness" standard under criminal, not civil, law). Thus, the subjective component requires proof that (1) "the official being sued subjectively perceived facts from which to infer substantial risk to the [prisoner]," (2) the official "did in fact draw that inference," and (3) the official "then disregarded that risk." *Quigley*, 707 F.3d at 681 (internal quotations omitted).[6] "Indeed, '[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.'" *Reilly*, 680 F.3d at 624 (quoting *Blackmore*, 390 F.3d at 896).

---

[6] "Officials, of course, do not readily admit this subjective component, so 'it [is] permissible for reviewing courts to infer from circumstantial evidence that a prison official had the requisite knowledge.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 540 (6th Cir. 2008) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). The Sixth Circuit acknowledges that "[a] claim of inadequate medical treatment[,]" as opposed to a claim of a complete denial of medical treatment, "may state a constitutional claim" but cautions that such claims are generally limited to situations where "the treatment rendered is 'so woefully inadequate as to amount to no treatment at all.'" *Clark v. Corrs. Corp. of Am.*, 98 F. App'x 413, 416 (6th Cir. 2004) (unpublished) (citing *Westlake*, 537 F.2d at 860-61).

## A.     Defendant Russell Malicoat's Objections [7]

Objection # 1A:[8]

In his first objection, Russell contends that Magistrate Judge Whalen erred in concluding that he was not entitled to summary judgment on Plaintiff's deliberate indifference claim. Magistrate Judge Whalen concluded that "[a] question of fact exists as to whether [Russell] perceived then disregarded a serious threat to Plaintiff's well being." (R&R 12.) Russell contends that this conclusion

---

[7] The facts of the present dispute being thoroughly laid out in Magistrate Judge Whalen's R&R, the Court need not engage in a recitation of the record in the instant Opinion and Order.

[8] The Court has labeled the objection 1A because the first objection contains two distinct arguments, which the Court addresses in a bifurcated fashion.

was reached in error, arguing that Plaintiff has pointed to nothing beyond mere allegation or speculation to raise a triable question of fact on the subjective component of a deliberate indifference claim; that is, whether Russell perceived and disregarded Plaintiff's serious medical need. This argument stems from Russell's belief that because there is some evidence in the record that he called prison healthcare after departing Plaintiff's cell, Plaintiff cannot satisfy the subjective prong of the deliberate indifference test. (Russell's Obj. 3.) The Court does not agree.

Cherry-picking the evidence favorable to his position and glossing over the rest, Russell relies on four pieces of evidence in effort to demonstrate his entitlement to judgment as a matter of law. First, Russell cites Karen's deposition testimony, during which she testified that Russell called her at approximately 10:15 PM to inform her that he had a prisoner complaining of back and neck pain, and that the prisoner had run out of medication. (Karen Dep. 47, ECF No. 181, Ex. D.) Second, during his deposition, Plaintiff testified that Russell "could have" called healthcare on his behalf, but did not know whether he in fact had. (Pl. Dep. 64, ECF No. 181, Ex. A.) Third, Officer Brent testified during his deposition that he believed Russell called healthcare because it was unusual that Karen would have had the same "diagnosis" of hyperventilating as Russell. However, Officer Brent did not witness Russell place a call. (Brent Dep. 82, ECF No. 181, Ex. C.)

9

Lastly, Russell contends that the prison logbook entries establish that Plaintiff went to healthcare at 10:40 PM, forty minutes after Russell's shift began, which apparently establishes a lack of deliberate indifference.  (ECF No. 181, Ex. D.) Russell ignores the fact that the prison logbook contains no entry regarding whether or not he called healthcare, even though Russell testified that he would normally have entered both the call to healthcare as well as the actual trip to healthcare in the logbook.  (Russell Dep. 45, ECF No. 189, Ex. 8.)  Further, as Plaintiff points out, even if Russell eventually called healthcare, there is no indication that he called before Officer Brent intervened.  As discussed in further detail below, this evidence is not conclusive and fails to demonstrate the absence of a genuine issue of material fact.

Nowhere in Russell's objection does he confront the unfavorable facts, most particularly, Plaintiff's rendition of what transpired or the evidence corroborating Plaintiff's version of the facts.  For instance, Russell indicated that he thought Plaintiff was complaining of back pain and that Plaintiff was hyperventilating. (Russell Dep. 45, ECF No. 181, Ex. B.)  However, Plaintiff testified that when Russell reached his cell, he was lying on the floor, and clearly indicated to Russell that he was having chest pains, experiencing difficulty breathing, and that he had a history of cardiovascular problems.  (Pl. Dep. 28-30, ECF No. 189, Ex. 1.)  Despite Plaintiff's request for assistance, according to Plaintiff, Russell told Plaintiff to

10

calm down and to stop hyperventilating prior to departing the cell, leaving Plaintiff with only his roommate for a period of ten to fifteen minutes before another corrections officer, Officer Brent, came to check on Plaintiff.  (*Id.*)   Further, Officer Brent testified that when he arrived at Plaintiff's cell, Plaintiff "appeared to be in severe pain.  He was holding his chest and he was saying that, you know, he had real bad chest pains, and so I went and called control center and informed control center . . . that I needed to take this individual to the healthcare, and I called also healthcare." (Brent Dep. 11, ECF No. 189, Ex. 2.)

A reasonable jury could credit Plaintiff's version of events, events corroborated at least in part by Officer Brent's testimony regarding what he observed when he went to Plaintiff's cell.  The above sampling of conflicting facts demonstrates that there is a dispute about what Russell was told and what he perceived when he went to Plaintiff's cell.  Further, if Plaintiff's version is believed by a finder of fact, Russell's lack of an explanation for why it took "approximately 20 minutes after reporting his medical issue to Russell" for Plaintiff to be taken to healthcare (Russell Obj. 4), could result in a conclusion that Russell was deliberately indifferent to Plaintiff's plight.  This is because the symptoms Plaintiff reported to Russell (e.g., chest pain and trouble breathing) are "the classic symptoms of a heart attack."  *Estate of Carter v. City of Detroit*, 408 F.3d 305, 307 (6th Cir. 2005).  He was lying on the floor, and although Plaintiff's

11

complaints were over a short period of time, "even laypersons can be expected to
know that a person showing the warning signs of a heart attack needs treatment
immediately in order to avoid death." *Id.* at 312.  Rather than provide assistance,
Russell departed the cell, leaving Plaintiff on the floor for a period of at least ten
minutes.  Such delay in the face of such an immediate threat to Plaintiff's well-
being creates a question of whether Russell was deliberately indifferent.  *Id.* at
311-13; *Blackmore*, 390 F.3d at 899 ("When prison officials are aware of a
prisoner's obvious and serious need for medical treatment and delay treatment of
that condition for non-medical reasons, their conduct in causing the delay creates a
constitutional infirmity.").

In sum, contrary to Russell's first objection, the R&R sets forth a
comprehensive overview of the key facts of the case, disputed and otherwise, prior
to concluding that the record supports two conflicting versions of events.  Because
judges on summary judgment are required to view the evidence in the light most
favorable to the non-moving party and are not permitted to make credibility
determinations or to weigh the evidence, Magistrate Judge Whalen did not err in
concluding that there exists a genuine issue of material fact that precludes a finding
that either party is entitled to judgment as a matter of law. *Anderson v. Liberty
Lobby, Inc*., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986) ("Credibility
determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").  For these reasons, the Court overrules Russell's objection.

Objection #1B:

Russell also claims that Magistrate Judge Whalen erred by failing to address his argument that deliberate indifferences requires a plaintiff to demonstrate actual harm resulting from a delay in medical treatment.  (Russell Obj. 4-5 (citing *Napier v. Madison Cnty.*, 238 F.3d 739, 742-43 (6th Cir. 2001)).)  As set forth in Plaintiff's Response to this objection, this argument is wholly lacking in merit. First, *Napier*'s verifying evidence requirement addresses the objective, not subjective, prong of a deliberate indifference claim.  Because Russell has essentially conceded that a heart attack is sufficiently serious to satisfy the objective component by failing to object to Magistrate Judge Whalen's R&R in this regard, *Napier* is irrelevant for the proposition for which it is cited.  Second, *Napier*'s verifying evidence requirement has been limited to cases involving only "minor maladies or non-obvious complaints of a serious need for medical care." *Blackmore*, 390 F.3d at 898.  Classic heart attack symptoms do not fall within this category.  Third, and lastly, Russell does not endeavor to refute, nor does he even

mention, the expert medical testimony indicating that delayed treatment of heart attacks causes irreversible damage. (ECF No. 189, Ex. 9.)

For these reasons, Russell's objection is not well-taken, and is therefore overruled.

Objection #2:

In his second objection, Russell contends that Magistrate Judge Whalen erred in concluding that he is not entitled to qualified immunity, and relies on *Smith v. County of Lenawee*, 505 F. App'x 526 (6th Cir. 2012) (unpublished) in support of this contention. (Russell Obj. 5.) However, as the analysis that follows will demonstrate, Magistrate Judge Whalen did not err in this regard, as *Smith* is distinguishable on very critical facts.

In *Smith*, a panel of the Sixth Circuit analyzed whether various law enforcement officials in the Lenawee County Jail should be cloaked with qualified immunity in an Eighth Amendment deliberate indifferent case where an inmate died of a seizure brought on by delirium tremens within days of being brought into custody. In his objections, Russell analogizes himself to two of the defendants in *Smith* (Sergeant Dye and Officer Westgate) both of whom the Sixth Circuit deemed entitled to qualified immunity. However, the situation presented in the instant dispute is not analogous to the events transpiring in *Smith*, namely because the Sixth Circuit's qualified-immunity determination in *Smith* rested on the

14

established principle that "'[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.'"  *Smith*, 505 F. App'x at 532 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).

With respect to Sergeant Dye, the Sixth Circuit noted that although he had rather significant exposure to the decedent and recognized that her symptoms were deteriorating, he called with a doctor, who assured him that he would have a nurse examine the decedent the following day.  *Id.* at 533.  The doctor indicated that the decedent was on good medication and that "Sitting in the jail will do her some good [,]" but noted that officials should keep an eye on her.  *Id.* at 530, 533. Sergeant Dye complied with the doctor's medical instructions, and even moved the decedent to a padded observation room to reduce the likelihood that she would injure herself.  *Id.* at 533.  On these facts, the Sixth Circuit held that Sergeant Dye did not exhibit a sufficiently culpable state of mind with respect to the decedent's medical care, as he was following the advice of a physician.  *Id.* at 534.  Turning to Officer Westgate, who had "limited exposure" to the decedent, the Sixth Circuit concluded that he, too, was "entitled to qualified immunity for essentially the same reasons . . . [as] Sergeant Dye."  *Id.*  That is, Officer Westgate "had read Dye's incident report concerning his conversation with [the physician] and was therefore

15

aware that the doctor felt that [the decedent]'s continued presence in the jail was appropriate." *Id.*

Despite Russell's effort to shoehorn the facts of this case into those of *Smith*, the factual scenarios are simply not comparable. Unlike in *Smith*, Russell did not act in reliance on the advice of any medical professional. Accordingly, Russell's second objection is overruled.

**B.     Defendant Karen Malicoat's Objections**

After carefully reviewing the evidence presented by the parties and noting the conflicting versions of events supported by the record, Magistrate Judge Whalen concluded that "[a] question of fact [] remains as to whether [Karen]'s failure to provide appropriate treatment for the cardiac condition amounts to deliberate indifference." (R&R 13.) Karen objects to this conclusion on the basis that (1) Magistrate Judge Whalen failed to consider the medical records attached to her summary judgment motion and (2) that Magistrate Judge Whalen erred by ignoring the case law cited in the R&R, specifically, *Sanderfer v. Nichols*, 62 F.3d 151 (6th Cir. 2003).

Turning first to Karen's contention that Magistrate Judge Whalen erred by failing to consider the medical records, the Court notes that Magistrate Judge Whalen did discuss the evidence contained in those records, but did so by way of citing to Karen's deposition testimony. Neither the SOAP Note Summary Karen

16

points to nor the previous healthcare kites submitted by Plaintiff demonstrate the absence of a genuine issue of material fact. The SOAP Note Summary, authored by Karen after Plaintiff's March 8, 2009 healthcare visit, reports that Plaintiff's vitals were normal and that Plaintiff had "[c]hest pain [] across his chest under clavicles." (Karen's Obj. 3-4 (citing Medical Records, ECF No. 183).) However, the same document reported that Plaintiff was brought to healthcare because he was "complaining of chest pain, can't breath (*sic*) and laying (*sic*) on floor." Further, both Plaintiff and Officer Brent testified that Plaintiff repeatedly indicated that he was having chest pains and that he had to take a nitroglycerin pill while in the healthcare area.[9] Contrary to Karens's assertions, there is sufficient record evidence creating a genuine issue of material fact on the issue of whether she perceived and disregarded a serious risk to Plaintiff's health.

With respect to Karen's argument that *Sanderfer* controls, the Court does not agree. Although Karen asserts that the facts in *Sanderfer* are "substantially similar to the facts in this case[,]" this characterization is inaccurate. In *Sanderfer*, the Sixth Circuit determined that a prison healthcare worker was entitled to summary

_____

[9] While Karen did not note this in the SOAP Note Summary, she did indicate that Plaintiff had taken "nitro" at 2:30 PM, 9:15 PM, and 10:30 PM – approximately twenty minutes before he arrived at the healthcare unit according to her report – without any relief. (ECF No. 183.) That Plaintiff had repeatedly taken heart medication, repeatedly stated that he had chest pains, and was having difficulty breathing should have raised concerns, as these have been described as classic heart attack symptoms. *Estate of Carter*, 408 F.3d at 307.

judgment because the record did not support a claim of deliberate indifference.  In that case, a man named Clayton was admitted to jail and subsequently filled out a medical screening report indicating that he had a history of asthma and high blood pressure.  62 F.3d at 153.  Although examined three times during his short stay in jail, Clayton never again mentioned his high blood pressure, complaining only that he needed his asthma medication.  During each examination, Clayton's blood pressure was within a normal range.  *Id.*  The defendant healthcare worker examined Clayton on one of the three occasions, during which he complained of not having taken his asthma medication for a month, coughing up green phlegm, a fever, as well as nasal congestion.  *Id.*  At no time during this examination did Clayton mention his history of high blood pressure.  *Id.*  The healthcare worker, who admittedly failed to review Clayton's intake records noting his history of hypertension, diagnosed Clayton with bronchitis.  *Id.*  Approximately two weeks later, Clayton collapsed and died while playing basketball in jail.  *Id.*  His cause of death was related to his high blood pressure.  *Id.*

On these facts, the Sixth Circuit concluded that "[t]he record in this case simply does not contain facts from which the jury could conclude that [the healthcare worker] was aware of facts from which she could and did draw the inference that her conduct posed a substantial risk of serious harm to Clayton."  *Id.* at 155.  Clayton had never complained of hypertension, his blood pressure was

18

within normal range on all three occasions on which it was measured, and he did not display any symptoms of heart disease when he was seen by the defendant. *Id.*

These facts stand in stark contrast to what occurred here. First, and as noted in the R&R, "Plaintiff and Officer Brent both testified that [Karen] was informed that Plaintiff was experiencing chest pains," and Plaintiff "also reported shooting arm pain and that he had a history of cardiac problems." (R&R 14.) Far from being unaware of any heart disease symptoms, the testimony of Plaintiff and Officer Brent could support a finding that Karen both observed and was directly informed that Plaintiff was suffering from a heart attack. Further, two separate investigations by two state entities reached the same conclusion. Unlike *Sanderfer*, a reasonable factfinder presented with Plaintiff's version of events could find in his favor. Accordingly, Karen is not entitled to summary judgment in her favor and the Court overrules her objection.

### III.   CONCLUSION AND ORDER

For the reasons stated herein, the Court concludes that Magistrate Judge Whalen's resolution of Plaintiff's deliberate indifference claim against both Defendant Russell and Defendant Karen was proper. The Court, therefore, **OVERRULES** both sets of objections (ECF Nos. 203 & 204) and **ADOPTS** the R&R.

Accordingly,

19

     **IT IS ORDERED** that Defendant Russell Malicoat's summary judgment motion (ECF No. 181) is **GRANTED** as to Plaintiff's conspiracy claim but **DENIED** as to Plaintiff's deliberate indifference claim;

     **IT IS FURTHER ORDERED** that Defendant Karen Malicoat's summary judgment motion (ECF No. 182) is **GRANTED** as to Plaintiff's conspiracy claim but **DENIED** as to Plaintiff's deliberate indifference claim.

Dated: September 30, 2015

                         s/PATRICK J. DUGGAN
                         UNITED STATES DISTRICT JUDGE

Copies to:

**Brian M. Schwartz, Esq.**
**Joel C. Bryant, Esq.**
**Muhammad Misbah Shahid, Esq.**
**Michael R. Dean, AAG**
**Cori E. Barkman, AAG**
**Carly A. Van Thomme, Esq.**
**Ronald W. Chapman, Esq.**
**Magistrate Judge R. Steven Whalen**

20